## EWEN v. AMERICAN FIDELITY CO.

(Circuit Court of Appeals, Second Circuit. March 2, 1921.)

No. 116.

1. **Abatement and revival ⬦39—Action against dissolved corporation abates.**
   When a corporation has been legally dissolved, it is dead, and an action against it abates the same as an action against an individual abates on his death, so that a judgment against a corporation after its dissolution is wholly void.

2. **Insurance ⬦49—Existence of surety company held to have terminated two years after injunction against continuing business.**
   Under the Illinois Surety Company Act, which made such a company subject to Act of July 1, 1874 (Hurd's Rev. St. 1917, c. 73, §§ 11–19), in regard to the dissolution of insurance companies, providing that such companies should become extinct by ceasing to do business for one year

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and that when their charters expired or became forfeited by nonuser the company should be continued a body corporate for two years for the purpose of prosecuting and defending suits against them, a surety company ceased to exist two years after the entry of a decree against it enjoining it from transacting any further business and appointing a receiver to close up its affairs.

**3. Abatement and revival** ⊜⟶**39—Dissolution of corporation in home state abates actions in all states.**

The state which grants a corporate franchise has exclusive and supreme power to withdraw it, so that, when a corporation's existence is terminated in the state of its organization, an action against it in another state is thereby abated.

**4. Insurance** ⊜⟶**49—Enjoining continuance of business of surety company held "final decree" and not "interlocutory decree."**

In a suit for the dissolution of an insolvent surety company and the appointment of a receiver, a decree, reciting that the court, being fully advised in the premises, restrained the surety company from further prosecution of its business and its officers from interfering with its records, and which was based not only on the bill and petition and answer but also upon oral proof in open court, is a "final decree" which determines the existence of the corporation, not merely an "interlocutory order," which is one made pending cause and before final hearing on the merits and where further action is necessary for the object of maintaining the status quo.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Decree or Judgment; Interlocutory Decree or Judgment.]

**5. Courts** ⊜⟶**366(7)—State court's construction of general corporation law held not to control construction of insurance corporation law.**

The decisions of the Supreme Court of Illinois, construing section 10, General Corporation Law Ill., which continued the corporate capacity of corporations for two years for the purpose of collecting debts due the corporation, does not control the construction of the Insurance Company Law of 1874, which by different language regulates the dissolution of insurance and surety companies.

**6. Insurance** ⊜⟶**49—Proviso against relief from liability held not to authorize judgment against dissolved surety company.**

A provision in Insurance Company Law, § 13, that the dissolution of the company by ceasing to do business shall not relieve it from liabilities to any of its creditors, does not authorize the entry of judgment against a surety corporation more than two years after it had been enjoined from doing further business when such judgment was prevented, not by section 3, which contained the proviso, but by section 4, continuing the corporate powers for two years for settling its affairs.

In Error to the District Court of the United States for the Southern District of New York.

Action by John Ewen against the American Fidelity Company. Judgment for defendant, and plaintiff brings error. Affirmed.

This cause comes here on writ of error to the United States District Court for the Southern District of New York.

On May 11, 1915, a summons was issued in an action brought in the New York Supreme Court, Kings County, wherein David Clinton Mackey was plaintiff and the Illinois Surety Company was defendant. That company was a surety corporation organized under the laws of the state of Illinois. Mackey had been its agent in New York City for the purpose of executing fidelity and surety bonds. The action was brought by him to recover an alleged balance of commissions due under contracts respecting which Mackey acted as agent

and broker for the company, obtaining the applications for the bonds and issuing the same.

In the above action Mackey in his complaint declared that he had at the special instance of the surety company performed services for it in the procuring and execution of surety company bonds and undertakings and that the company had agreed to pay him therefor certain commissions on all premiums earned in respect to such bonds and undertakings. He asked for judgment in the aggregate sum of $7,498.02 with interest from February 20, 1915. By stipulation and consent and pursuant to an order of the court an amended complaint was subsequently filed on November 28, 1917, in which Mackey demanded judgment in the sum of $23,000.

The surety company in its answer admitted some of the allegations in the complaint and denied others. It set up the contract which existed between it and Mackey and alleged that after Mackey had repeatedly violated its provision he was on that account discharged by it on December 17, 1913. It set up by way of counterclaim that Mackey had collected premiums for which he was liable to the defendant in the sum of $495,269.72, on which the commissions earned amounted to $185,614.47, leaving a balance of $309,655.25 as its share of the said premiums. That of this amount it had received the sum of $245,700.99, leaving a balance due and owing to it the sum of $63,954.25. It was also alleged that Mackey as agent had collected other sums which he had converted to his own use wrongfully and it asked for judgment in its favor for the sum of $153,914.56 with interest from December 17, 1913.

The case was at issue in July 1915, and it was not until November 21, 1917, that Mackey obtained an order of reference. It was finally agreed that the matter should be submitted to the referee in August, 1918. About that time the referee died. The second referee was not appointed until May 2, 1919, which was eight months after the first referee's death. The referee then appointed filed his report on June 9, 1919, in which he found the plaintiff entitled to judgment against the defendant in the sum of $31,859.38 with interest thereon from January 1, 1917, in the amount of $4,662.08, making a total of $36,521.46, and for the costs of the action to be taxed. The counterclaim set up in the answer was dismissed. Accordingly and on June 21, 1919, judgment was entered in favor of Mackey in the amount of $37,041.95.

It appears that prior to the entry of this judgment Mackey had attached certain property belonging to the surety company, the warrant having been issued to the sheriff of the county of Kings and a levy made thereunder. The property so attached was released on July 10, 1915, by the execution and delivery of a bond by the American Fidelity Company whereby it undertook in the sum of $7,500 that the Illinois Surety Company would on demand pay to Mackey any judgment he might obtain against it in the action then pending between them, not exceeding the amount above named. And thereupon the attachment was released.

On the same day that Mackey obtained his judgment he assigned it to John Ewen, a lawyer in the city of New York. The assignment gave to the assignee an irrevocable power of attorney to take all lawful ways to recover the money due on the judgment. And on the same day by a separate instrument Mackey also assigned to Ewen all of his rights against the American Fidelity Company growing out of its undertaking already referred to.

The assignee of the judgment on August 29, 1919, commenced the present action against the American Fidelity Company as defendant on the bond given by it to Mackey by which it undertook that the judgment which Mackey obtained against the Illinois Surety Company should be paid in a sum not exceeding $7,500 with interest.

The plaintiff in the present action alleges in his complaint the giving by the defendant of its undertaking to Mackey that the Illinois Surety Company would pay any judgment he obtained in his action against that company in a sum not to exceed $7,500. It alleges the recovery of the judgment in the sum of $37,041.95, and that demand has been made for the payment of the judgment by the Illinois Surety Company and that no part thereof has been paid either by that company or by the defendant. He demanded judgment against the defendant in the sum of $7,500.

The defendant thereupon removed the action from the state court into the District Court of the United States for the Southern District of New York on the ground of diversity of citizenship. It appears that the Illinois Surety Company was organized under the laws of the state of Illinois. It also appears that the American Fidelity Company, defendant herein, is a corporation organized under the laws of the state of Vermont and is licensed and authorized to transact fidelity and surety business in the state of New York, and that it was actually so transacting business therein at the times mentioned in the complaint.

After the removal into the District Court defendant answered and set up the defense that at the time judgment was entered in the action which Mackey brought against the Illinois Surety Company that corporation was not in existence and that the judgment was consequently void.

On the trial of the case in the court below by consent of counsel a jury of one was impaneled and sworn.

At the conclusion of the case counsel for the defense moved to dismiss and also moved to direct a verdict for defendant on the ground that at the time the alleged judgment was entered the Illinois Surety Company had ceased to exist and that it was impossible to enter a valid legal judgment against it thereafter. The court stated that the defense had been established, and he accordingly instructed the jury to return a verdict for the defendant. This was done and judgment was rendered accordingly.

Wilder, Ewen & Patterson, of New York City (John Ewen and William R. Wilder, both of New York City, of counsel), for plaintiff in error.

Gleason, Vogel & Proskauer, of New York City (Joseph M. Proskauer and Wesley S. Sawyer, both of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). [1] When a corporation has been legally dissolved it is dead. According to the principles of the common law it is not in existence for any purpose thereafter. The necessary effect of the death of a corporation is not different from the death of a natural person in that in the case of each no judgment can thereafter be entered against either in the absence of a statute otherwise providing. A judgment can no more be rendered against a dead corporation than against a dead man. It is wholly void in the one case as in the other. That such is the common-law rule is so well established upon the authorities that it is idle to controvert it. An action against a corporation abates when corporate existence comes to an end. Pendleton v. Russell, 144 U. S. 640, 12 Sup. Ct. 743, 36 L. Ed. 574; Carr v. Hamilton, 129 U. S. 252, 9 Sup. Ct. 295, 32 L. Ed. 669; Martyne v. American Ins. Co., 216 N. Y. 196, 110 N. E. 502; Blanchard v. Gay Co., 289 Ill. 421, 124 N. E. 616; Thornton v. Railway Co., 123 Mass. 32; Morgan v. New York National Building Association, 73 Conn. 151, 46 Atl. 877; Eagle Chair Co. v. Kelsey, 23 Kan. 632; Short Line R. R. Co. v. Maine Central R. R. Co., 92 Me. 476, 43 Atl. 113.

It is necessary to inquire, therefore, into the alleged dissolution of the Illinois Surety Company to ascertain whether the corporation had become civiliter mortuus before judgment was rendered against it. It appears that the statute under which the Illinois Surety Company was

organized is entitled "An act to provide for the organization, management and regulation of surety companies," in force April 17, 1899 (Laws Ill. 1899, p. 260). That that statute provided that such companies shall be subject to the provisions of "An act in regard to the dissolution of insurance companies," in force July 1, 1874. That this statute of 1874 (Hurd's Rev. St. of Illinois 1917, pt. 2, c. 73, pp. 1679, 1680) provides as follows:

"(3) The charters of all insurance companies incorporated in this state, which either from neglect or by vote of their members or officers, or in obedience to the decree of any court, have ceased, or shall hereafter cease, for the period of one year, to transact the business for which they were organized, shall be deemed and held extinct in all respects, as if they had expired by their own limitation; and the circuit courts shall have authority, upon application, by the petition of the auditor of state, or of any person interested, to fix, by decree, the time within which such companies shall close their concerns: Provided, that this section shall not be construed to relieve any such company from its liabilities to the assured or any of its creditors.

"(4) Insurance companies whose charters expire by their own limitation, or become forfeited by non-user, or are dissolved by decree of court, or otherwise, shall, nevertheless, be continued bodies corporate for the term of two years after such expiration, forfeiture or dissolution, for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their concerns, to dispose of and convey their property, and divide their capital stock and assets, but not for the purpose of continuing the business for which they were organized."

It appears also that on April 19, 1916, a majority in number and interest of the stockholders of the Illinois Surety Company filed a bill in the superior court of Cook county, Ill., "to close said company and to procure a decree of dissolution of the corporation in the manner provided by law." That they enumerated the assets of the corporation in all states, and alleged that the corporation was insolvent and that if a receiver should not be appointed it would be subject to a multiplicity of suits and its property lost and depleted by expenses and unevenly distributed to its creditors. That they asked that—

"The Illinois Surety Company may be restrained by proper decree * * * from further prosecution of its business, * * * and that a receiver be appointed forthwith, to take charge of the estate and effects of said corporation, including all such securities as are deposited in this and other states, to collect the debts due and the property belonging to said corporation with power to prosecute and defend suits in the name of said corporation, or in the name of said receiver, and to do all other acts necessary for the collection, marshaling, and distribution of the assets of said Illinois Surety Company and the closing of its concerns."

On the same day, April 19, 1916, the Illinois Surety Company filed an answer to the bill, admitting all the allegations thereof, including insolvency.

On the same day, April 19, 1916, oral testimony was taken in the superior court of Cook county, Ill., which found that the averments of the bill were true, and decreed:

"(1) That the said Illinois Surety Company, be, and it is hereby forthwith restrained, enjoined and forbidden from further prosecution of its business."

On the same day the superior court made a separate order appointing a receiver of all the property of the corporation or held for its

account wherever situated. The order gave the receiver "power to prosecute and defend suits in the name of the Illinois Surety Company, or in his own name."

[2] By virtue of the above order of the Illinois court enjoining the Illinois Surety Company from the further prosecution of its business, the charter of the company must be deemed and held to have become extinct in all respects as if it had expired by its own limitation after the lapse of one year from the date of the order as provided in section 3 of the Act of 1874 above quoted. But this corporation in accordance with the provision contained in section 4 of the same act, also above quoted, continued to be a body corporate for the term of two years after the expiration of its charter for the purpose of prosecuting and defending suits by or against it and for the settlement of its affairs.

As the Illinois Surety Company was restrained from doing any business by court decree of April 19, 1916, its charter expired on April 19, 1917. As it was continued a body corporate by statute for two years and no more after its charter became extinct its existence ceased and it became dissolved for all purposes on April 19, 1919.

The receiver was never made a party to the action brought by Mackey in New York against the Illinois Surety Company. On April 18, 1919, the superior court of Cook county, Ill., which had appointed the receiver, directed him to discontinue any further defense of the Illinois Surety Company in the New York action and directed him to notify Mackey of the order. The order also directed Mackey to file his claims with the master who had been appointed under an order of the Illinois court made on January 30, 1918. That order referred all actions pending in the several states against the Illinois Surety Company, and against the Illinois Surety Company and the receiver, and all disallowed claims to a master to hear the evidence and report his conclusions of fact and law. Both of these orders appear to have been made on due notice to all parties entitled to receive notice. As soon as the order of April 18, 1919, was made the receiver directed the attorneys who had hitherto appeared for the Illinois Surety Company in the New York action to discontinue their appearance. They thereupon at once notified Mackey that their authority to represent the defendant in that action and to appear for it had been terminated and revoked. After this notification Mackey made haste to obtain the judgment in the New York action which is the judgment involved in the suit now before this court, and for the payment of which it is claimed the present defendant must pay to the extent of its bond. That action it will be recalled had been commenced in May, 1915, and had been prosecuted, it must be admitted, with much indifference through a period of four years, there being no adequate explanation given of the reason for the delay.

[3] The state which grants a corporate franchise has exclusive and supreme power to withdraw it. Morgan v. New York National Building Association, supra. When the state of Illinois which created the Illinois Surety Company terminated its existence, its action was as decisive in New York as in Illinois. For as Chief Justice Taney said in Bank of Augusta v. Earle, 13 Pet. 519, 588 (10 L. Ed. 274):

"A corporation can have no legal existence out of the boundaries of the sovereignty by which it is created.   *   *   *   It must dwell in the place of its creation, and cannot migrate to another sovereignty."

The Supreme Court has often reaffirmed the statement. It must necessarily follow that a decree of dissolution of a corporation rendered in the state of its creation abates not only all actions pending by or against it in that state but in every other.

[4] It was urged upon the argument that the language of section 13 of the Illinois Insurance Law hereinbefore set forth and which provides for the forfeiture of charters for failure to transact business for one year requires that this failure to do business must be "in obedience to the decree of any court," and there was no such decree but only an interlocutory order. The language used by the court was:

"*   *   *   And the court being fully advised in the premises, doth find from said bill and petition and answer and oral proof heard in open court that the averments in said bill and petition are true, and doth order, adjudge and decree as follows, without bond from the complainants and until the further order of court:

"(1) That the said Illinois Surety Company be, and it is hereby forthwith restrained, enjoined and forbidden from further prosecution of its business.

"(2) That all the servants, agents, officers and employees of said Illinois Surety Company, be and they are hereby restrained and enjoined from interfering with, copying or carrying away any of its books, papers, records, schedules, lists of policyholders, or other documents, or any copies thereof."

An interlocutory order is one made pending a cause and before final hearing on the merits and where further action is necessary. But the decree in this case by its language shows that it was made after the court was "fully advised in the premises" and that it was based not only on the "bill and petition and answer" but also upon "oral proof in open court" which satisfied the court "that the averments in said bill and petition are true." It was not necessary that any further steps should be taken, and· it settled not some intervening matter but the cause itself. There was nothing left open which remained to be disposed of. The rights of the parties were determined by it. The object of an interlocutory order is to maintain the status quo. The object of a final decree is to determine the right in controversy. That was done by the decree which was entered in this case. This court has before decided that a decree does not lose its character as a final decree by adding the words "until the further order" of the court. That question has been settled for fifty years in the federal courts by the decision of the Supreme Court in French v. Shoemaker, 12 Wall. 86, 98, 20 L. Ed. 270. In that case leave was given, at the foot of the decree, to either party to apply for such further order as might be necessary or as might be required in relation to any matter not finally determined by it. The court in commenting upon it declared it to be "quite apparent that that reservation was superadded to the decree as a precaution and not because the court did not regard the whole issue between the parties as determined by the decree."

[5] In Commercial Loan & Trust Co. v. Mallers, 242 Ill. 50, 89 N. E. 661, 134 Am. St. Rep. 306, 17 Ann. Cas. 224, the court construed section 10 of the General Corporation Law of that state (Hurd's Rev.

St. 1917, c. 32), and which provided that corporations organized under the law should continue their corporate capacity "during the term of two years," for the purpose only of collecting the debts due said corporation, and selling and conveying the property and effects thereof." It held that the act applied only to corporations organized under it. It accordingly held that a corporation organized for banking purposes, and not organized under the General Corporation Law, was not affected by the two-year limitation and might rightfully enforce its claims against its debtors in the courts of the state until such indebtedness had become barred by the general statute of limitations. This, the court thought, was in accord with "the general public policy of the state which permits a corporation to do such acts as may be necessary to collect its debts and settle up its affairs after dissolution." In that case the banking corporation had been dissolved during the pendency of the action; judgment was not actually entered in the suit until ten years thereafter; it was held that the action did not abate.

In Singer & Talcott Co. v. Hutchinson, 176 Ill. 48, 51 N. E. 622, the court construed section 12 of the Corporation Law of the state which reads as follows:

"The dissolution, for any cause whatever, of any corporation created as aforesaid, shall not take away or impair any remedy given against such corporation, its stockholders or officers, for any liabilities incurred previous to its dissolution."

The court in passing upon it said:

"While the corporate capacity of this corporation was continued for two years after the expiration of its charter, or until April 10, 1894, in order to bring suits for the purpose aforesaid, its corporate capacity to be sued as a party defendant, for liabilities which accrued before its dissolution, was continued without limitation as to time, and therefore the general statute of limitations, only, would apply."

If the Illinois Surety Company had been subject to the General Corporation Law of the state instead of the Insurance Law of 1874 there might be ground for the contention that the judgment which Mackey obtained in New York after the two year period had expired was binding upon the Illinois Corporation. But if, as we hold it was, the corporation was subject to the act of 1874 in regard to the dissolution of insurance companies, then it was not subject to the General Corporation Law of the state, or to the public policy of the state as announced in the two decisions last quoted. Our attention has not been called to any decision of the Supreme Court of Illinois, or of any of its other courts, construing sections 3 and 4 of the act of 1874, and in the absence of such a decision we must hold that the provision in section 4, heretofore quoted, which continues bodies corporate after their charter had expired "for the term of two years" for the purpose "of prosecuting and defending suits by or against them and of enabling them gradually to settle and close their concerns" is a period of limitation and that no judgment can be entered in any action, against any corporation subject to its provisions, unless it is done within the period so prescribed.

[6] Counsel for the plaintiff directs our attention to the language used at the end of section 13 of the Insurance Law, wherein it is expressly said that—

"This section shall not be construed to relieve any such company from its liabilities to the assured or to any of its creditors."

That section provides that the charter of the corporation expires by limitation at the end of the one-year period, and that the fact that it has expired shall not relieve it from liabilities to creditors. But it is not claimed that the company is relieved from liabilities to creditors by section 13. It is claimed that it is relieved under section 14. That section provides that after the corporation has been dissolved at the end of one year under the provisions of section 13 it shall be continued for the term of two years more for the purposes mentioned. The relief from liability plainly comes at the end of this additional period of two years under the provision of section 14.

There are other assignments of error which we have examined and found without merit.

Judgment affirmed.